**CENTRAL R. CO. OF NEW JERSEY v. MARTIN, State Tax Com'r, et al. and twenty-three other cases.**

Nos. 7348–7371.

Circuit Court of Appeals, Third Circuit.

Nov. 27, 1940.

Rehearing Denied Jan. 24, 1941.

David T. Wilentz, Atty. Gen., of New Jersey (Duane E. Minard and Charles V. Webb, Jr., both of Newark, N. J., of counsel), for appellants.

Maximillian M. Stallman, of Newark, N. J., and Robert J. Bain, of Jersey City, N. J. (Jacob Aronson, R. W. Barrett, and A. H. Elder, all of New York City, Ralph E. Lum, Sr., of Newark, N. J., Douglas Swift and Herbert A. Taylor, both of New York City, of counsel), for appellees.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

These are 24 separate appeals, argued together in this court, from separate judgments, similar in form, entered by the District Court for the District of New Jersey in 24 separate suits after a consolidated hearing. The suits were brought by the plaintiffs, each of which is a railroad corporation owning or leasing railroad property in the State of New Jersey, against the State Tax Commissioner, Comptroller, Treasurer and Attorney General of the State of New Jersey seeking to restrain these officers from collecting so much of the taxes levied against the railroad corporations and certain of their subsidiaries for the tax years 1934, 1935 and 1936 as might be found to be illegal and excessive. Each of the eight plaintiffs brought a separate suit with respect to each of the three tax years involved.

The plaintiffs alleged in their bills of complaint that the assessments upon which the taxes were based were made upon erroneous principles, were excessive, unduly discriminatory and illegal, and operated to deprive plaintiffs of their property without due process of law in violation of the Fourteenth Amendment. After a lengthy trial the district court filed an opinion (30 F.Supp. 41) in which it discussed fully the contentions of the parties and found as a fact that the methods of assessment of railroad property proposed by the plaintiffs[1] were not shown to be feasible or to

---

[1] The plaintiffs proposed first the ascertainment of the entire value of the railroad system on the basis of capitalized earnings, stock and bond prices or a com-

be productive of true value, and that the evidence did not disclose an intentional and systematic design upon the part of the assessing authorities to discriminate against railroad property and in favor of other property in the state. Considering the methods used by the State Tax Commissioner to assess the railroad property here involved the court found that land items were individually valued with reference to the value of adjacent land, that structures were valued on the basis of depreciated cost, that although there had been a very substantial decline in the earnings of the railroads during and preceding the years in question the evidence did not disclose that there had been any horizontal reduction in assessments attributable absolutely to this decline, and that the valuation of corporate franchises did not evidence the influence of earnings or lack of them. Upon the basis of these findings the court concluded that the disputed assessments were arbitrary, capricious, basically unsound and so grossly excessive as to amount to constructive fraud and that the disregard of earnings in the valuation of the plaintiff's property was a denial of right under the due process clause of the Fourteenth Amendment. Holding that the power to determine a proper assessment remained in the state authorities the district court declined to state to what extent it thought the challenged assessments excessive, but in each case entered a judgment enjoining the defendants from collecting more than 70% of the challenged tax until the taxing authorities of New Jersey should make a new assessment according to law. The present appeals by the state officers followed.

The defendants in the court below and in this court strongly urged that the bills of complaint should be dismissed for a number of reasons, among them that the judgments violate Section 265 of the Judicial Code, 28 U.S.C.A. § 379, that the suits were in substance brought against the State of New Jersey without its consent and in violation of the Eleventh Amendment, that the issues of fact and law are res judicata, and on the merits that the challenged as-

sessments do not violate the due process clause of the Fourteenth Amendment. .

■ Considering first the merits of the cases it must be borne in mind that federal jurisdiction is invoked upon the ground that the suits involve a controversy arising under the Constitution of the United States. It is not based upon diversity of citizenship. Consequently the questions arising under the Constitution and laws of the State of New Jersey which have been much discussed in argument are not open and we are confined to a single inquiry, namely, whether the district court erred in holding that the collection of the taxes in controversy would deprive the plaintiffs of their property without due process of law. The plaintiffs contend that the assessments of their property were made on bases or criteria of value which have been specifically denounced by the courts as violative of the Constitution and statutes of New Jersey, that they were made in total disregard of the earnings element, and that by giving effect to this factor very substantial declines in the values of their properties were indicated for the tax years 1934, 1935 and 1936 which were entirely disregarded by the State Tax Commissioner in making the assessments for those years. Consequently, urge the plaintiffs, their taxes for these years, having been computed on arbitrary and fallacious valuations determined through the application of erroneous principles and without any consideration of earnings or the lack of them, are so grossly excessive as to be confiscatory and, therefore, to constitute a denial of due process of law.

■ The plaintiffs' first premise cannot stand. Essentially it is that the practice of valuing railroad land with reference to the value of adjoining land, and of valuing railroad structures on a basis of depreciated cost, in each case without regard to earnings, violates the constitution and laws of New Jersey. But this is a question of state law which, as we have pointed out, may not be considered in these cases in the absence of a showing, not disclosed by the record of these cases, of an administration of the state statutes in such

posite of both and then the allocation of that value to New Jersey and the other states through which the system runs on the basis of average percentages of a combination of the following factors: (a) road miles, (b) all track miles, (c) locomo-
tive miles, (d) car miles (freight and passenger), (e) train miles (freight and passenger), (f) traffic units—ton miles, gross or net, passenger miles, (g) reproduction cost and relative investment, and (h) gross revenue.

an arbitrary way as to amount to a denial of due process of law. Certainly it would not be beyond the legislative power of the state to prescribe such bases for the valuation of railroad property as a class. Nashville, C. & St. L. Ry. v. Browning, 310 U. S. 362, 60 S.Ct. 968, 84 L.Ed. 1254. Furthermore we think it clear that these methods of valuation do conform to the New Jersey laws. They have been followed by the taxing authorities of that state for more than fifty years and as this court pointed out in Lehigh Valley R. Co. of New Jersey v. Martin, 100 F.2d 139, 143 (which involved similar taxes of the plaintiffs for the years 1932 and 1933), "have received the sanction of the Courts of New Jersey and are now firmly embodied in its laws." The New Jersey decisions are referred to in that case and need not be cited here.

■ The plaintiffs' original contention that they had been denied the equal protection of the laws because of discrimination in valuation between railroad property and other property in the state falls with the finding of the district court that no such discrimination was shown to exist, and it has not been pressed in this court. The separate classification by the state of railroad property for taxation was valid under both state and federal Constitutions. State Board of Assessors v. Central R. R. Co., 48 N.J.L. 146, 4 A. 578; Kentucky Railroad Tax Cases (Cincinnati, N. O. & T. P. R. Co. v. Kentucky), 115 U.S. 321, 6 S.Ct. 57, 29 L.Ed. 414; New York Rapid Transit Corp. v. New York, 303 U.S. 573, 58 S.Ct. 721, 82 L.Ed. 1024. In view of this separate classification by the New Jersey tax laws, such discrimination, even if it had existed, would not have violated the Fourteenth Amendment. Nashville, C. & St. L. Ry. v. Browning, supra. So far as discrimination within the railroad class is concerned, it was neither alleged nor shown.

■ There remains for consideration the contention that the failure of the state authorities to give effect to declining earnings in making the valuations resulted in assessments so excessive as to violate the due process clause and thus to justify the injunctive relief granted by the district court. In support of its action that court relied largely upon the case of Great Northern Ry. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532. After the judgments appealed from were entered, however, the Supreme Court in the case of Nashville, C. & St. L. Ry. v. Browning, supra, clearly indicated that Great Northern Ry. v. Weeks is to be restricted to its own facts if it is not to be considered overruled.

Nashville, C. & St. L. Ry. v. Browning is indistinguishable in principle from the present cases and makes clear why we cannot sustain the plaintiffs' contention that the exaction of the taxes here involved runs afoul of the due process clause. In that case Mr. Justice Frankfurter said (310 U.S. at page 370, 60 S.Ct. at page 972, 84 L.Ed. 1254):

"Finally, the Railway claims that the valuation of its entire system, on the basis of which the Commission has measured Tennessee's shares, is so far in excess of 'full cash value' as to offend the due process clause. The details on which this claim is based are fully set forth in the opinions below and call only for summary treatment here. The argument basically derives from the fact that the Commission's valuation of petitioner's system was the same as that for the previous biennium, although numerous adverse economic factors are alleged to have greatly reduced the property's worth. But railroads, unlike farms and city lots and stocks and bonds, are not objects of exchange. The very notion of a 'full cash value' for a railroad is in many respects artificial. See 1 Bonbright, The Valuation of Property, pp. 511–632. Whatever may be the pretenses of exactitude in determining such a 'value', to claim for it 'scientific' validity, is to employ the term in its loosest sense. Compare Chicago, B. & Q. Ry. Co. v. Babcock, 204 U.S. 585, 598, 27 S.Ct. 326, 329, 51 L.Ed. 636. Thorough canvass by the state courts found no justification for upsetting the determination of the Commission, and we could scarcely find warrant in the record for doing so. But even assuming that there was an over-assessment, constitutional invalidity would not follow. If the needs of a state require higher taxes, the Fourteenth Amendment certainly does not bar their imposition. The maintenance of higher assessment in the face of declining value is merely another way of achieving the same result. Great Northern Ry. Co. v. Weeks,

297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532, does not bar the way. That is the only case, and it was decided by a sharply divided Court, in which a non-discriminatory assessment was struck down simply because it was thought excessive. Plainly, therefore, the case must have rested upon considerations peculiar to its own facts. Those are not the facts now before us. We conclude, therefore, that the Commission's over-assessment of petitioner's property, if over-assessment there was, constitutes no deprivation of any right under the Federal Constitution."

It follows that the district court erred in its conclusion that the imposition of the taxes here in question violated the federal Constitution and in its judgments enjoining the collection of 30% of those taxes.

■ Our determination of the merits of the controversy involved in these cases makes unnecessary an extended consideration of the procedural and jurisdictional defenses raised by the defendants, but we will briefly notice some of them. The first is that the judgments below violate Section 265 of the Judicial Code, 28 U.S.C.A. § 379, which provides that "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State * * *." It appears that the amount of the taxes in these cases had been finally determined on appeal by the State Board of Tax Appeals before these suits were brought. The next step in their collection under the New Jersey statutes (N.J.S.A. 54:28) was for the Attorney General, upon five days' notice to the railroads, to make application to a justice of the State Supreme Court to have judgments entered for the taxes in the name of the State of New Jersey as plaintiff and for execution thereon. Such proceedings were actually begun with respect to the years 1934 and 1935 before these suits were instituted.

In a preliminary stage of the present actions the district court held that the proceedings in the New Jersey Supreme Court were not "proceedings in any court of a State" within the prohibition of Section 265 of the Judicial Code because they did not involve the exercise of any judicial function but merely ministerial action to effectuate the tax liens. 19 F.Supp. 84, 87. In this we think the court erred. Since they were proceedings brought to collect the taxes Section 265 applied. Kohn v. Central Distributing Co., 306 U.S. 531, 59 S.Ct. 689, 83 L.Ed. 965. It is true that the amount of the taxes was not open to question. But the proceedings were required to be instituted upon notice to the railroads and their creditors and were thus inter partes. Undoubtedly the defense of payment would have been available to the railroads. The proceedings are supplementary judicial proceedings for the collection of taxes already ascertained. Proceedings for execution and sale are within the terms of Section 265. Mills v. Provident Life & Trust Co., 9 Cir., 100 F. 344; Hyattsville Bldg. Ass'n v. Bouic, 44 App.D.C. 408.

■ The defendants also urge that these suits were in substance brought against the State of New Jersey without its consent and therefore in violation of the Eleventh Amendment to the federal Constitution. It is clear that the injunctions granted in these cases run against the defendants as state officers and relate to their performance of duties imposed upon them by the statutes of the state. We have seen that their action is in accord with the statutes and the settled practices of the state and that these do not violate the federal Constitution. Under these circumstances it is settled that the suits are in reality suits against the state and therefore not within the jurisdiction of the district court. Worcester County Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268. It is only in cases where state officers have attempted to enforce an unconstitutional law or to administer a valid law wrongfully that their acts have been held to be so disassociated from the state for which they purport to act as to permit a suit to be brought against them with respect to those acts. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Greene v. Louisville & Interurban R. R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88.

■ Finally the defendants urge that the issues involved in these cases are res judicata. It is contended that these issues were adjudicated in suits brought by these plaintiffs against these defendants with respect to the taxes for the year 1933 in the State Supreme Court. Central R. R. Co. v. Thayer-Martin, 114 N.J.L. 69, 175 A. 637. We think that this contention also

should have been sustained. In paragraph 27 of their bills of complaint in the 1934 cases the plaintiffs aver that the assessment of their property for the year 1934 "was made in the same manner as the assessment thereon for the year 1933, which was sustained by the State Board of Tax Appeals and the New Jersey Supreme Court after review at the instance of the plaintiff on complaint and certiorari, respectively, the State Board and the State Court having thereon sustained the above described method of assessment adopted by the State Tax Commissioner." It is thus clear by the plaintiffs' own averment that not only were the parties identical but that the question to be determined, the validity of the assessment methods, was the same in each case. It follows that the doctrine of res judicata precludes the plaintiffs from litigating the same legal question again. Tait v. Western Maryland Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Lehigh Valley R. Co. v. Martin, 3 Cir., 100 F.2d 139.

In view of what has already been said we find it unnecessary to discuss the remaining contentions advanced at argument, except to point out that although the act of August 21, 1937, 50 Stat. 738, 28 U.S.C.A. § 41(1), which deprives the district courts of jurisdiction to enjoin the collection of state taxes where a plain, speedy and efficient remedy may be had in the state courts, does not apply to these cases which were commenced before its passage, nevertheless such a remedy was afforded to the plaintiffs by the law of New Jersey. Those laws accorded the plaintiffs the right to a judicial review upon the facts and the law of the determination of the State Board of Tax Appeals upon a writ of certiorari by the State Supreme Court (N.J.S.A. 54:26, 2:81-8) with an appeal as of right to the State Court of Errors and Appeals (N.J.S.A. 2:27-350, 351). See Hill v. Martin, 296 U.S. 393, 56 S.Ct. 278, 80 L.Ed. 293. Upon such a review the payment of the taxes in dispute is stayed (N.J.S.A. 54:26-12). In addition the plaintiffs might have any federal question disclosed by the record reviewed by the Supreme Court of the United States under Section 237 of the Judicial Code, 28 U.S.C.A. § 344.

The judgments of the district court are reversed and the causes are remanded with directions to dismiss the actions.