## OKLAHOMA PACKING CO. et al. v. OKLAHOMA GAS & ELECTRIC CO. et al.*

No. 19. Argued October 17, 1939.—Decided December 4, 1939. Opinion on Petition for Rehearing delivered January 15, 1940.

*Mr. Paul Ware,* with whom *Mr. W. R. Brown* was on the brief, for petitioners.

---

*The original opinion of the Court delivered December 4, 1939, which, on petition for rehearing, was withdrawn and replaced (308 U. S. 530) by the one here reported, appears in the Appendix, *post,* p. 703. For separate opinion of the CHIEF JUSTICE and McREYNOLDS and ROBERTS, JJ., delivered December 4, 1939, see *post,* p. 9.

*Messrs. I. J. Underwood* and *Streeter B. Flynn,* with whom *Mr. Robert M. Rainey* was on the brief, for respondents.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The case concerns a rate controversy which has been winding its slow way through state and federal courts for thirteen years.[1] While the relationship of two utilities with Wilson & Co., a consumer of natural gas, complicates the situation, the legal issues before us may be disposed of as though this were a typical case of a utility resisting an order reducing its rates.[2] Oklahoma Gas & Electric Company (hereafter called Gas & Electric) appealed to

---

[1] A history of the controversy is to be found in *Oklahoma Gas & Electric Co.* v. *Wilson & Co.,* 146 Okla. 272; 288 P. 316; *Oklahoma Gas & Electric Co.* v. *Wilson & Co.,* 54 F. 2d 596; *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.,* 6 F. Supp. 893; *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.,* 292 U. S. 386; *Oklahoma Gas & Electric Co.* v. *Wilson & Co.,* 178 Okla. 604; 62 P. 2d 703; *Oklahoma Packing Co.* v. *Oklahoma Gas & Electric Co.,* 100 F. 2d 770.

[2] Oklahoma Natural Gas Co. and Oklahoma Gas and Electric Co., both engaged in the sale of natural gas in and about Oklahoma City, had agreed to a division of territory. Under that agreement, Wilson & Co. bought gas from Gas & Electric. The Oklahoma Corporation Commission found that Natural Gas had held itself out to provide gas to industrial consumers at a lower rate than that at which Wilson & Co. was able to buy from Gas & Electric. The Commission then ordered Natural Gas to provide Wilson & Co. with its gas at prevailing industrial rates. Both Natural Gas and Gas & Electric resisted the order. Natural Gas contended that it had never held itself out to industrial consumers; Gas & Electric claimed that it was being unconstitutionally deprived of its right to sell to Wilson & Co. at the higher rate. If, pending appeal from the Commission, the order were not stayed, Wilson & Co. would have been able to purchase gas from Natural Gas at the lower rate and Gas & Electric would have been forced either to lower its rates to meet the competition or to lose the business.

6

the Oklahoma Supreme Court from such an order by the Oklahoma Corporation Commission. The reduction was stayed pending the appeal, but to protect Wilson & Co. against a potential overcharge, Gas & Electric gave a supersedeas bond. Gas & Electric lost its appeal, *Oklahoma Gas & Electric Co.* v. *Wilson & Co.*, 146 Okla. 272, 288 P. 316, and Wilson & Co. brought suit on the bond. That suit was instituted on December 3, 1931, in one of the district courts of Oklahoma. To enjoin prosecution of the latter suit Gas & Electric on May 20, 1932, invoked the jurisdiction of the United States District Court for the Western District of Oklahoma.[3] After a complicated series of moves in both state and federal courts, not necessary here to detail, this relief was granted by the District Court on September 10, 1937, and on December 19, 1938, sustained by the Circuit Court of Appeals. *Oklahoma Packing Co.* v. *Oklahoma Gas & Electric Co.*, 100 F. 2d 770. Since the case in part was in conflict with the Second Circuit's decision in *Neirbo Co.* v. *Bethlehem Shipbuilding Corp.*, 103 F. 2d 765, and also presented novel aspects of important questions of federal law, we granted certiorari, 306 U. S. 629. We are not concerned with the merits of the Commission's order.

At the threshold we are met by the procedural objection, seasonably made, that Wilson & Co., a Delaware corporation, was improperly sued in the District Court of the Western District of Oklahoma. The objection is

---

[3] In 1928 Natural Gas complied with the order; and since that time Wilson & Co. has been buying gas at the lower rate prescribed by the Commission. The sole question now involved in these proceedings is the liability of Gas & Electric to Wilson & Co. for alleged overcharges between 1926 and 1928. The District Court found specifically that the Corporation Commission had made no threat to enforce penalties for violations of the 1926 order, and as to the Commission, declined to grant any injunctive relief. Cf. *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.*, 292 U. S. 386, 390.

unavailable. Prior to this suit, Wilson & Co. had, agreeable to the laws of Oklahoma, designated an agent for service of process "in any action in the State of Oklahoma." Both courts below found this to be in fact a consent on Wilson & Co.'s part to be sued in the courts of Oklahoma upon causes of action arising in that state. The Federal District Court is, we hold, a court of Oklahoma within the scope of that consent, and for the reasons indicated in *Neirbo Co.* v. *Bethlehem Shipbuilding Corp.*, 308 U. S. 165, Wilson & Co. was amenable to suit in the Western District of Oklahoma.

Petitioners further urge (1) that their plea of *res judicata* should have been sustained, and (2) that § 265 of the Judicial Act (Act of March 3, 1911, 36 Stat. 1162, 28 U. S. C. § 379, derived from § 5 of the Act of March 2, 1793, 1 Stat. 333, 335), was a bar to the suit.

The claim of *res judicata* is based on the prior determination in 1930 by the Supreme Court of Oklahoma that the contested order of the Corporation Commission was valid. *Oklahoma Gas & Electric Co.* v. *Wilson & Co.*, 146 Okla. 272; 288 P. 316. The pronouncements of the Oklahoma Supreme Court concerning the character of such a determination—whether under the Oklahoma Constitution it was a "legislative" or "judicial" review—have for a time, however, been ambiguous and fluctuating. After the present bill was filed but before the challenged injunction was decreed, the Oklahoma Supreme Court had held that its decision in cases like that of *Oklahoma Gas & Electric Co.* v. *Wilson & Co.*, was a judicial judgment. *Oklahoma Cotton Ginners' Assn.* v. *State,* 174 Okla. 243; 51 P. 2d 327. But, in *Community Natural Gas Co.* v. *Corporation Commission,* 182 Okla. 137; 76 P. 2d 393, decided after the decree here in issue, the Oklahoma court formally characterized its review in cases prior to the decision in the *Ginners'* case as "legislative," re-

fused to give that decision retroactive effect, and therefore deemed the *res judicata* doctrine inapplicable to these prior reviews. Hence, the plea of *res judicata* in this case must fail, for on that issue state law is determinative here. *Union & Planters' Bank* v. *Memphis,* 189 U. S. 71; *Covington* v. *First National Bank,* 198 U. S. 100; *Wright* v. *Georgia Railroad & Banking Co.,* 216 U. S. 420.

There remains, therefore, the applicability of § 265 of the Judicial Code.[4] That provision would operate as a bar upon the power of the District Court to enjoin proceedings previously brought in the state court on the supersedeas bond, if "the only thing sought to be accomplished by this equitable action" is to stay the continuance of that action. Such was the construction placed upon the bill by the earlier District Court of three judges, and such was this Court's assumption when the latter decision came here on appeal. *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.,* 6 F. Supp. 893, 895; *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.,* 292 U. S. 386, 389. That case eliminated the Corporation Commission as party to the litigation. The District Court to which this Court remanded the matter summarized Gas & Electric's claim by way of answer to the action brought by Wilson & Co. in the state court as an attack upon the Commission's order "for substantially the same reasons as set out" in the present bill.

The present suit, therefore, is one for an injunction "to stay proceedings" previously begun in a state court. The decree below is thus within the plain interdiction of an Act of Congress, and not taken out of it by any of the exceptions which this Court has heretofore engrafted upon a limitation of the power of the federal courts dat-

---

[4] Section 265 provides: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

ing almost from the beginning of our history and expressing an important Congressional policy—to prevent needless friction between state and federal courts. Compare *Madisonville Traction Co.* v. *St. Bernard Mining Co.*, 196 U. S. 239; *Simon* v. *Southern Railway Co.*, 236 U. S. 115; *Wells Fargo & Co.* v. *Taylor*, 254 U. S. 175. See Warren, "Federal and State Court Interference," 43 Harv. L. Rev. 345, 372–77. That the injunction was a restraint of the parties and was not formally directed against the state court itself is immaterial. *Hill* v. *Martin*, 296 U. S. 393, 403. Cf. *Kohn* v. *Central Distributing Co.*, 306 U. S. 531. *Steelman* v. *All Continent Corp.*, 301 U. S. 278, pressed upon us by respondents and relied upon below, is plainly inapplicable.

Neither record nor findings below give any other basis for injunctive relief save the threatened injury implied in the state court lawsuit; and that could not be enjoined. The decree below is reversed, with directions to dismiss the bill.

*Reversed.*

The CHIEF JUSTICE, MR. JUSTICE McREYNOLDS and MR. JUSTICE ROBERTS adhere to the views expressed in their separate opinion in this case.

The separate opinion referred to was delivered December 4, 1939 (see footnote, p. 4), and is as follows:

MR. CHIEF JUSTICE HUGHES:

I concur in the reversal of the judgment upon the ground that Wilson & Co., a Delaware corporation, was not amenable to suit in the federal District Court in Oklahoma. The question is essentially the same as that presented in *Neirbo Co.* v. *Bethlehem Shipbuilding Corp.*, 308 U. S. 165, and what was said in the dissenting opinion in that case need not be repeated here. (See, as to the scope of the consent under the Oklahoma statute, the

observations of the Circuit Court of Appeals in the *Neirbo* case, 103 F. 2d 765, 769.)

But if it be granted that the Delaware Corporation was amenable to the process in question, I am unable to agree that the complainants should be denied relief because of the defense of *res judicata*. The judgment to which this effect is given was rendered by the Supreme Court of Oklahoma in 1930, sustaining, on appeal, an order of the Corporation Commission requiring gas to be furnished to Wilson & Co. at a specified rate. *Oklahoma Gas & Electric Co.* v. *Wilson & Co.*, 146 Okla. 272; 288 P. 316. At the time of that decision, the review by the Supreme Court of Oklahoma of such an order of the Corporation Commission was considered to be legislative in character. *Oklahoma Gas Co.* v. *Russell*, 261 U. S. 290, 291; *McAlester Gas & Coke Co.* v. *Corporation Commission*, 101 Okla. 268, 270; 224 P. 698; *City of Poteau* v. *American Indian Oil & Gas Co.*, 159 Okla. 240, 242, 243; 18 P. 2d 523, in which the state court cited with approval the decision to that effect of the Circuit Court of Appeals in *Oklahoma Gas & Electric Co.* v. *Wilson & Co.*, 54 F. 2d 596, 598, 599, applying the Oklahoma decisions. Compare *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.*, 292 U. S. 386, 388; *Corporation Commission* v. *Cary*, 296 U. S. 452, 458. The contention of the complainants before the state court was that the Commission's order violated their rights under the Federal Constitution. 146 Okla. 272, 281, 288; 288 P. 316. But in the view, as then held, that the action of the state court was legislative in character, no appeal lay to this Court from the state court's determination of the federal question. *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 226, 227; *Oklahoma Gas Co.* v. *Russell, supra*. Accordingly, the complainants brought this suit in the federal court to enjoin the enforcement of the Commission's order.

It was not until several years later (in 1935) that the Oklahoma Supreme Court decided, in a suit between other parties, that its action in reviewing such an order of the Commission was judicial and not legislative in character. *Oklahoma Cotton Ginners' Assn.* v. *State,* 174 Okla. 243; 51 P. 2d 327. The manifest injustice of holding that complainants are bound by the state court's ruling in 1930 as a judicial determination, when at that time under the state court's construction of the state constitution the complainants were not at liberty to treat the ruling as a judicial determination and to obtain a review of the federal question by this Court upon that ground, is not met, as it seems to me, by invoking the general doctrine of *res judicata.*

Whether the judgment of a state court is *res judicata* is a question of state law. The federal courts are not bound to give such domestic judgments any greater force than that awarded them by the courts of the State where rendered. *Union & Planters' Bank* v. *Memphis,* 189 U. S. 71, 75; *Covington* v. *First National Bank,* 198 U. S. 100, 109; *Wright* v. *Georgia Railroad & Banking Co.,* 216 U. S. 420, 429. I think that we are not at liberty to assume that the Oklahoma court would so far depart from the plain requirements of justice as to preclude in these circumstances a review of the federal question in a court of competent jurisdiction. The state court has not spoken to that effect and what the state court has said I think clearly imports the contrary.

This appears from its decision in *Oklahoma Gas & Electric Co.* v. *Wilson & Co.,* 178 Okla. 604; 63 P. 2d 703. That was an action in the state court on the supersedeas bond given on the appeal to the Supreme Court from the Commission's order in question, and Wilson & Co., the plaintiff, had judgment. The Supreme Court reversed that judgment and directed a stay pending the deter-

mination in this very suit in the federal court of the validity of the Commission's order. The Supreme Court expressly referred to its decision, in 1935, in *Oklahoma Cotton Ginners' Assn.* v. *State, supra,* that its action in reviewing orders of the Commission affecting rates of public utilities constituted a judicial determination of the questions involved. But instead of holding that the ruling in 1930, upon the order now under review, constituted a final adjudication of the validity of that order, the Supreme Court held that the question of validity was an open one for determination by the federal court in the present suit. After saying that in view of the uncertainty with respect to the "right to a judicial remedy in the state courts," the federal court had acquired jurisdiction of this suit, the state court concluded as follows:

"That remedy was available to them as the only certain method of obtaining a judicial determination of the validity of the commission's order. The suit was a direct attack upon such order, and until its validity was established in that suit, the state court was without jurisdiction to proceed with an action based upon such order. This for the reason that where direct attack in equity is made upon the order of the commission, the defendants' liability on such order is not finally determined judicially until final determination of the equitable action."

If under the state law as thus declared in Oklahoma upon consideration of the particular circumstances of this case, liability on the Commission's order is not finally determined judicially until the determination of that question in this equity suit, I am at a loss to understand how the action of the state court on the 1930 appeal can be regarded as *res judicata* and thus a bar to that determination.

The decree below enjoining enforcement of the Commission's order appropriately followed the determination of its invalidity. The point that the decree should not

have gone further and enjoined the prosecution of the action in the state court upon the supersedeas bond is at best only one of technical importance, as the state court itself enjoined such proceedings pending the determination of this suit, apparently in the view that a determination herein of the invalidity of the order would dispose of the merits.

MR. JUSTICE McREYNOLDS and MR. JUSTICE ROBERTS join in this opinion.